IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Ernest D. Pirron, | ) | Case No. 22 B 08555 |
| | ) | |
| Debtor. | ) | Hon. Michael B. Slade |
| | ) | |

**MEMORANDUM OPINION**

The Trustee's motion for turnover (Dkt. No. 27) requires me to evaluate competing lines

of authority regarding how to allocate a tax refund between a debtor's estate and a non-debtor

spouse where, as here, they file a joint return.  Ultimately, I am not persuaded that any of the

methodologies typically chosen by courts around the country suits as a general rule applicable in

all cases.  Instead, I believe the right methodology will differ depending on the underlying facts

that *created* the tax refund in question.  Here, there is no evidence that the tax refund in question

had anything to do with payments made by the Debtor to taxing authorities, and in a contested

scenario where the Debtor and non-Debtor spouse were fighting over the refund, the Debtor

would lose.  That means the Trustee's motion is granted in part and denied in part; the vehicle at

issue must be turned over to the Trustee, but the Debtor's spouse retains the tax refund.

Ernest Pirron filed this chapter 7 case on July 29, 2022.  (Dkt. No. 1)  In Official Form

122A-1 (Dkt. No. 2), Pirron represented that he is "Married" and that his spouse is "NOT" filing

the bankruptcy case with him, *id.* (emphasis in original).  Pirron also represented that as of July

29, 2022, he and his spouse were "[l]iving in the same household" and that neither had any

current monthly income.  (*Id.*)[1]

---

[1] I assume this reflects that the Debtor was not working as of the petition date and that his wife, who receives irregular payments reflecting the success of a real estate investment firm, has no "monthly" income.

1

In 2022, Joseph E. Cohen was appointed chapter 7 trustee and reported that there were assets available for distribution to creditors.  (Dkt. No. 22)  On January 6, 2025, he filed this motion for turnover.  (Dkt. No. 27)  At the parties' request, I entered a briefing schedule on the motion.  (Dkt. No. 30)  Pirron filed a response complete with evidence, but the Trustee did not file a timely reply and thus waived the right to do so.  *See* Bankr. N.D. Ill. L.R. 9014-1(B).

The Trustee seeks turnover of two items.  First, he asks that the Debtor turn over a 2017 Jeep Cherokee the Trustee believes is worth about $10,000 more than the Debtor's exemption. (Dkt. No. 27 ¶ 4).  Second, he claims he "is entitled to 50% of the tax refunds or credits received by the Debtor and his wife in the amount of $76,178.00" for tax year 2021.  (*Id.* ¶ 6)  He makes a very straightforward argument: "[t]he scheduled 2017 Jeep Cherokee and the unscheduled tax refunds are property of the bankruptcy estate pursuant to Section 541 of the Bankruptcy Code" and a debtor must "surrender to the trustee all property of the estate."  (*Id.* ¶ 7).

With respect to the Jeep, the Trustee's argument is correct for reasons that are just that straightforward.  The Bankruptcy Code provides that the debtor "shall . . . surrender to the trustee all property of the estate."  11 U.S.C. § 521(a)(4).  "Shall" means shall, *see In re Nakhuda*, No. NC-14-1235-TaPaJu, 2015 WL 873566, at *3 (B.A.P. 9th Cir. Mar. 2, 2015), and, at a minimum, "surrender" requires a debtor to make property available to the Trustee upon request, *see In re Trujillo*, 485 B.R. 238, 249 (Bankr. D. Colo. 2012).  It may be (as Pirron claims) that the Jeep has body damage and 90,000 miles and is subject to a $4,000 lien.  (*See* Pirron Resp. at 8)  And Pirron may be right that the Trustee should have acted more quickly to sell the Jeep.  (*Id.*)  But it is undisputed that the Jeep is property of the estate.  The Trustee believes selling the Jeep will generate value for the estate that exceeds the Debtor's exemption and asks that it be turned over. The Debtor is ordered to make the Jeep available to the Trustee within seven days.

2

With respect to the tax refund, however, the Trustee's claim is much more complex. Courts around the country have treated tax refunds in this scenario—where a tax refund is paid to a jointly-filing couple of debtor and non-debtor—very differently. *See generally* 11 Collier on Bankruptcy ¶ TX 1.09[4] at TX1-72 (Richard Levin & Henry J. Summer eds., 16th ed 2024) (describing the "[v]arious approaches" that "have been applied to allocate federal tax refunds between a debtor's estate and non-debtor spouses.") The Seventh Circuit has not spoken on the issue, but my colleague Judge Baer has helpfully and exhaustively evaluated the competing methodologies. *In re McInerney*, 609 B.R. 497 (Bankr. N.D. Ill. 2019). As Judge Baer described, some courts split-the-baby with a "50/50 Rule," using a "presumption that each spouse contributed equally to the household, including nonmonetary contribution, and that, thus, the joint tax refund should be apportioned equally between the spouses."[2] Others use what they call an "Income Rule" to "divide[] joint tax refunds proportionally according to the income generated by each spouse."[3] The majority rule is the "Withholding Rule," under which a refund is "allocated between spouses in proportion to their respective tax withholdings during the relevant tax year."[4] And, finally, some courts use the more complicated "Separate Filings Rule,"

---

[2] *Id.* at 504 (citing *In re Spina,* 416 B.R. 92, 99 (Bankr. E.D.N.Y. 2009); *In re Vongchanh,* 2009 WL 1852452, at *2 (Bankr. N.D. Ill. June 29, 2009); *In re Innis,* 331 B.R. 784, 789 (Bankr. C.D. Ill. 2005); *In re Hejmowski,* 296 B.R. 645, 646 n.1 (Bankr. W.D.N.Y. 2003); and *Loevy v. Aldrich (In re Aldrich),* 250 B.R. 907, 911 (W.D. Tenn. 2000)).
[3] *Id.* at 505 (citing *Judson v. Levine (In re Levine)*, 50 B.R. 587, 587 (Bankr. S.D. Fla. 1985); *Lieshout v. Verill (In re Verill)*, 17 B.R. 652, 655 (Bankr. D. Md. 1982); *In re Kestner*, 9 B.R. 334, 336 (Bankr. E.D. Va. 1981); and *In re Colbert*, 5 B.R. 646, 648-49 (Bankr. S.D. Ohio 1980)).
[4] *Id.* at 505 (citing *Gordon v. United States*, 757 F.2d 1157, 1160 (11th Cir. 1985); *Carlson v. Moratzka (In re Carlson)*, 394 B.R. 491, 494 (8th Cir. BAP 2008); *Kleinfeldt v. Russell (In re Kleinfeldt)*, 287 B.R. 291, 292 (10th Cir. BAP 2002); *Monticello Arcade Ltd. P'ship v. Lyall (In re Lyall)*, 191 B.R. 78, 85 (E.D. Va. 1996); *In re Ruhl*, 474 B.R. 596, 597 (Bankr. N.D. Ill. 2012); *In re Gartman,* 372 B.R. 790, 796 (Bankr. D.S.C. 2007); *In re Lock*, 329 B.R. 858, 860 (Bankr. S.D. Ill. 2005); *In re Smith*, 310 B.R. 320, 323 (Bankr. N.D. Ohio 2004); *In re WDH Howell, LLC*, 294 B.R. 613, 618 (Bankr. D.N.J. 2003); and *In re Gleason*, 193 B.R. 387, 389 (Bankr. D.N.H. 1996)).

3

under which "the refund is apportioned based on a determination of what each spouse's contributions and tax liabilities would have been if the spouses had filed separately."[5]

The rationales offered by courts choosing among these approaches differ. My rationale starts from first principles: bankruptcy "is not a free-for-all equity balancing act" but rather a "forum in which creditors prove the entitlements that state or federal law confirms on them, and these entitlements are then enforced consistently with the provisions of the Code . . .." *In re Stoecker*, 179 F.3d 546, 551 (7th Cir. 1999), *aff'd sub nom. Raleigh v. Illinois Dep't of Revenue*, 120 S. Ct. 1951 (2000). Thus, in my view, the question at issue here is one of legal entitlement: in a contested scenario between debtor and non-debtor spouse fighting over the tax refund in question, who would win? If the debtor would win that fight by demonstrating his or her legal entitlement to the tax refund, it is estate property, and the refund must be turned over to the trustee. If (or to the extent that) the debtor would lose that fight, the tax refund was never property of the estate in the first place and is properly retained by its non-debtor holder.

None of the approaches summarized above precisely answers that question. The 50/50 Rule, while certainly easy to apply, appears to have nothing to do with state or federal law entitlement; it also produces random results that either could massively (and at all times artificially) help or harm estates and creditors depending on the facts.[6] The "Income Rule,"

---

[5] *Id.* at 506 (citing *Crowson v. Zubrod (In re Crowson)*, 431 B.R. 484, 490-96 (10th Cir. BAP 2010); *Lee v. Walro (In re Lee)*, 508 B.R. 399, 405-07 (S.D. Ind. 2014); *In re Nevins*, 564 B.R. 151, 152, 155 (Bankr. D.N.H. 2016); *In re Duarte*, 492 B.R. 100, 106 (Bankr. E.D.N.Y. 2011); *In re Hraga*, 467 B.R. 527, 531 (Bankr. N.D. Ga. 2011); *In re Palmer*, 449 B.R. 621, 626-28 (Bankr. D. Mont. 2011); and *In re Evans*, 449 B.R. 827, 831 (Bankr. N.D. Ga. 2010)).

[6] Consider a non-debtor spouse who made $1 million in the applicable tax year and overpaid taxes by $100,000, entitling the couple to a refund or credit in that sum, married to a debtor who made $50,000 and had taxes perfectly withheld by his or her employer during the tax year. Why does it make sense to gift the tax refund to the estate? Or, consider the reverse situation, where the debtor is the spouse who made $1 million in the applicable tax year and overpaid taxes by $100,000 (but is in bankruptcy because of, just to use a hypothetical example, a large judgment against her); why does it make sense to give half the tax refund to the non-debtor spouse and remove such funds from the estate and the hands of creditors? It is of course correct that, ideally, marriage is a partnership to which both spouses contribute, in financial and non-financial ways, to maintain. But that has nothing to do with how much a bankruptcy estate should have available to pay creditors where only one of the married couple is a debtor.

while less random, could produce similarly inaccurate results; a tax refund is the difference

between taxes paid and taxes owed, which may or may not neatly correlate with income.[7]  The

"Withholding Rule," though probably (as Judge Baer found) most applicable in the widest range

of cases, suffers from the reality that what is "withheld" can be a matter of *choice*: (1) employees

claim tax allowances that dictate the amount withheld from their paychecks, and such choices

may causes taxes to be over withheld (creating the right to a refund) or under withheld (creating

tax debts), while (2) some people (as with the Debtor's wife here) do not have funds withheld

from their paychecks at all, and instead make (or are supposed to make) quarterly estimated

payments that reflect the taxes they should owe (or at least are sufficient to meet the statutory

safe harbor that will avoid penalties).[8]  The "Separate Filings Rule," finally, has its own

problems—among other things, it requires new, potentially complex calculations to be run that

have no value other than to artificially understand tax obligations in a hypothetical world where

the debtor and his or her spouse are not married; in addition to creating an administrative

obligation that may be unnecessary, it ignores the reality that spouses file jointly when doing so

would have tax advantages, and both the debtor and his or her spouse should be as entitled to the

benefits of those tax laws inside bankruptcy as they are outside of bankruptcy.

---

[7] *See Lyall,* 191 B.R. at 85 (explaining that allocating based on the spouses' respective incomes may be problematic because the spouses may have the same income, but one might withhold more than the other).

[8] Employees at the beginning of employment typically fill out a W-4 form which generally leads to the calculation of withholding, and that may ultimately underestimate or overestimate tax liabilities for a variety of reasons.  And it's even more complicated for individuals who (like the Debtor's spouse here) did not have income withheld from a paycheck and instead made estimated quarterly payments to the IRS based either on what she projected her tax liability to be or, as tax professionals sometimes advise, at least that sufficient (based on a prior year's tax obligations) to meet the safe harbor below which a penalty would be owed for any underpayment.  The point of this discussion is that, as the court described in *Palmer,* 449 B.R. at 626, tax refunds exist for a variety of reasons independent of income or withholding in a specific tax year.

So, again, the question as I see it is this:  if there were no bankruptcy and Pirron and his wife were fighting over the $152,356 in tax refunds for tax year 2021, who would get them? Neither the filing of a joint return nor filing a chapter 7 case should change the answer, as:

> The case law overwhelmingly establishes that overpayments by married couples are apportionable to each spouse to the extent that he or she contributed to the overpaid amount.  Filing jointly does not give one spouse an interest in the income of the other.  **A premarital or postmarital loss or credit may be applied only against the income of the person who incurred the loss or credit.**  A joint income tax return does not create new property interests for the husband or wife in each other's income tax overpayment.

*Ragan v. Comm'r,* 135 F.3d 329, 333 (5th Cir. 1998) (*quoting* IRS Rev. Rul. 74-611 and *Hathaway v. United States,* 93-1 U.S.T.C. P 50,285 (E.D. Wash. 1993)) (emphasis added). Because that is the relevant question, depending on the facts of the individual case and the underlying law at issue, some combination of any of the four methodologies described in the case law (and summarized above) might answer it.  The problem with exclusive use of one the approaches described in the caselaw is that "tax refunds do not stem exclusively from income or withholdings." *Palmer*, 449 B.R. at 626.

A debtor's entitlement to such refunds should depend on why the refunds exist.  While in some cases the answer may require a complex calculation (as in *Palmer,* 449 B.R. at 626, which comes closest within the existing body of cases to reflecting my views), in others it is easy.  This is one of the easy cases, where the facts and legal arguments presented by the parties are so straightforward as to drive to a clear conclusion.

Here, the tax year at issue here is 2021, when the Debtor's employer withheld taxes from his paycheck and paid $15,585 to the Internal Revenue Service (IRS) and $5,198 to the Illinois Department of Revenue (IDOR).  (Dkt. No. 31-1, Pirron Aff., at Attach. 1)  There is no evidence in the record that the Debtor's withholdings overestimated his actual tax obligations to either

6

taxing authority, either alone or as part of a married couple.  The Debtor prepared a pro-forma

suggesting that, if he had filed separately, he actually would have owed additional funds to the

IRS for tax year 2021.  (*Id.* at Attach. 2).  And to perform a slightly more complex calculation

myself that gives the Debtor the tax advantages of marriage, consider this.  The Debtor's

reported 2021 gross income was $105,000.  (*Id.*)  In 2021, the standard deduction for married

couples was $25,100, so giving the Debtor credit for half of that (and assuming no other

deductions), his hypothetical taxable income would have been $92,450, and his "part" of the

couple's joint obligation even when making all assumptions in his favor would be to pay federal

tax equal to $11,836.[9]  The point of this illustrative analysis (making many assumptions in the

Trustee's favor) is that there is no reason to believe that the Debtor's actual withholding

materially over-reflected what he, separately or as part of this couple, actually owed.

By contrast, the Debtor's wife was involved in a real estate investment entity that did not

withhold anything from her paychecks, and she received substantial payments from that entity.

Accordingly, she made substantial estimated payments to the IRS and IDOR each quarter during

tax year 2021, in amounts totaling $577,630.  (Dkt. No. 31-1, Pirron Aff., at Attachment 1)  She

made these payments from a separate bank account into which her real estate investment firm

had paid her (whether this was salary or K-1 income or something else like a dividend, Pirron

does not say).  (*Id.* ¶ 6)  The nature of estimated tax payments (and as reflected in the actual

amounts paid here, which were all flat amounts in the hundreds) is that they are *estimates*—and

it would make sense to overestimate (to avoid arguments for a penalty, which can be punitive).

It is not hard to see (and impossible to ignore) how the estimated payments made by the Debtor's

wife here created the tax refund that the couple was entitled to for tax year 2021.

---

[9] *See* 2021 Tax Tables (available at www.irs.gov/pub/irs-prior/i1040tt--2021.pdf).

Accordingly, I have no reason to believe that, outside of bankruptcy, the Debtor would prevail (before the IRS, an arbitrator if the parties agreed to arbitrate, or a state or federal court) in any fight over the $152,356 in tax refunds/credits the couple received for the 2021 tax year. The Trustee has offered no state or federal law suggesting that, outside of bankruptcy, Pirron would receive any part of this refund.  For that reason, I do not think the Debtor's estate is entitled to any of those funds, so the Debtor is not obligated to turn any part of the refund over.

Pirron makes two other arguments in opposition to the Trustee's request for turnover. Neither of these two arguments are supported by any authority, and both are not persuasive.

*First*, Pirron offers that the "refund" from the 2021 tax year was not actually cash that the couple received, but instead was kept by the taxing authorities as an advance on 2022 taxes. (Pirron Resp. at 2, 4)  The implication that I suspect Pirron is asking me to draw from this fact is that the refund owed would not be an "asset" of the estate because it would never hit the Debtor or his wife's bank account.  I reject that theory.  If Individual A is owed a tax refund, he or she (like any citizen) has the choice of getting a refund of cash or using that overpayment as a credit against the next year's taxes (which many taxpayers do for convenience).  But it is still Individual A's money, and if Individual A is a debtor in a bankruptcy case, that money is clearly property of his or her estate.  *See* 11 U.S.C. § 541.  The only relevant question here is whether, in a contested scenario outside of bankruptcy, the Debtor would prevail (in whole or part) if he fought for the tax refund.  Because I believe he would not, the Trustee is not entitled to it.

*Second*, Pirron avers that the decision to file a joint tax return was made post-petition, and it was that decision that created the refund (hence, presumably the argument goes, the refund is not property of the estate).  (Pirron Resp. at 4)  I am not persuaded by this argument either. Presumably Pirron and his wife decided to file a joint tax return because they'd pay less total tax

8

if they did so.  But the timing of when the decision to file the Debtor's tax return (individually or jointly with his wife) was made is irrelevant, as is the timing of when the tax return was filed. Tax year 2021 is a pre-petition period, and (a) if there was a tax return filed for that year, which (b) the debtor would succeed, outside bankruptcy, in a fight over all or part of that return, then the return is (in whole or part) estate property.  It is because I believe the Debtor here would lose such a fight that I am denying the Trustee's motion for turnover with respect to the tax refund.

In sum, for the reasons stated here, the Trustee's motion for turnover (Dkt. No. 27) will be granted in part and denied in part.  The Debtor is directed to turn over the 2017 Jeep Grand Cherokee within seven days (unless agreement to keep it is reached with the Trustee beforehand) of the entry of the order.  The Trustee's request for turnover of 50% of the 2021 joint tax return is denied.

Signed:   February 18, 2025          By:   _____

MICHAEL B. SLADE
UNITED STATES BANKRUPTCY JUDGE